J-S21028-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :        PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| GEOVONNE IAN HOLMES, JR. | : |
| | : |
| Appellant | : No. 1108 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 14, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001747-2024

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:          **FILED: JULY 9, 2026**

Appellant, Geovonne Ian Holmes, Jr., appeals from the judgment of sentence entered on May 14, 2025, following his jury trial convictions for firearms not to be carried without a license and evading arrest or detention on foot.[1]  We affirm.

The trial court summarized the facts of this case as follows:

On May 5, 2024, police were dispatched to the 300 block of Lackawanna Street, Reading, Berks County, Pennsylvania for a report of a person brandishing a gun [and] wearing a red and black hoodie and shorts.  Upon arrival, Officer [Alexander] Findura of the Reading Police Department encountered [Appellant], who was wearing a red and black sweatshirt.  After identifying himself as [a] police [officer, Officer Findura] directed [Appellant] to show him his hands.  The body camera [video footage] of Officer Findura was admitted and played for the jury.  Officer Findura [was] standing in a lighted area and was wearing his uniform during his initial interaction with [Appellant,] prior to [a foot] chase and pursuit.  Officer Findura testified that after he indicated that he

---

[1]  18 Pa.C.S.A. §§ 6106(a) and 5104.2(a), respectively.

was a police officer, [Appellant] turned in [the officer's] direction (to the right), continued to look around the area and then a foot chase ensued past several apartment buildings. [Officer Findura] indicated that during the start of the chase that [Appellant's] right hand was in his hoodie pocket until he passed the last building when he began running with both hands exposed in a traditional manner. Officer Findura indicated that he did not see a firearm in [Appellant's] hands at any point during [that] pursuit or apprehension and that he lost sight of [Appellant] for a few seconds of the pursuit. A gun (Walther 22) with a bullet in the chamber was found in a window well in the northern corner of an apartment building [near] the corner [of the street] where Officer Findura lost sight of [Appellant]. The location of the gun corresponded with the location of [Appellant] moments before he [went] from running with his hand in his hoodie to running with both hands outstretched. When [Appellant] was ultimately stopped by police there was a .22 caliber bullet in his hoodie. This was the same brand and same caliber [as] found [i]n the recovered gun. [Appellant's] DNA was found (as part of a mixture) on the gun.

Trial Court Opinion, 10/31/2025, at 2-3.

On May 14, 2025, following a two-day trial, a jury found Appellant guilty of the aforementioned crimes.[2] On the same day, the trial court sentenced Appellant to an aggregate term of two to seven years of incarceration, followed by two years of probation. On May 23, 2025, counsel for Appellant filed a timely post-sentence motion which challenged the weight of the evidence presented at trial and requested reconsideration of Appellant's

---

[2] At trial, Appellant represented himself *pro se*, but the trial court appointed standby counsel.

J-S21028-26

sentence. The trial court held a hearing on June 10, 2025. On July 9, 2025, the trial court entered an order denying relief. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues[4] for our review:

1. Whether the [conviction] for firearms not to be carried without a license is contrary to the weight of the evidence presented at trial?

2. Whether the [conviction] for evading arrest or detention on foot is contrary to the weight of the evidence presented at trial?

Appellant's Brief at 5.

Both of Appellant's issues challenge the weight of the evidence presented at trial. As such, we will examine them together. First, Appellant claims that "it was physically impossible for [him] to [have] dipose[d] of the

_____

[3] Appellant filed a counseled notice of appeal on August 8, 2025. On August 14, 2025, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel for Appellant complied timely on September 5, 2025. On October 31, 2025, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

[4] As briefly mentioned above, Appellant, in his post-sentence motion, challenged the weight of the evidence and requested reconsideration of his sentence. However, Appellant did not raise his discretionary sentencing challenge in his Rule 1925(b) concise statement. Further, the trial court did not address it in its subsequent Rule 1925(a) opinion, and Appellant does not present any argument regarding sentencing in his appellate brief. As such, Appellant waived his sentencing issues by failing to preserve them before the trial court and for failure to develop them before this Court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [concise s]tatement … are waived"); *see* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved [section of an appellate brief] or is fairly suggested thereby."); *see also **Commonwealth v. Felder***, 247 A.3d 14, 20 (Pa. Super. 2021)(citation omitted)("an issue … not developed in the appellant's brief is abandoned and, therefore, waived.").

- 3 -

firearm as the Commonwealth claim[ed]" because "the [police] body worn camera admitted at trial did not show [Appellant] slowing down to toss a gun, nor [did] the video [record] any sound of a gun landing in the window well, nor did [Officer] Findura note that he heard anything or ever saw the firearm being held by [Appellant]." *Id.* at 12. Appellant claims that Officer Findura lost sight of Appellant until he "was a great distance from the window well [where the firearm was recovered] when [Officer] Findura was able to see [Appellant] again."[5] *Id.* With regard to his conviction for evading arrest, Appellant argues that he "did not know the police were the ones chasing him and, therefore, [Appellant] could not knowingly and intentionally flee from a lawful arrest or detention."[6] *Id.* As such, Appellant contends that the verdicts were against the weight of the evidence presented and he is entitled to a new trial. *Id.* at 14-15.

_____

[5] At trial, Appellant testified that there had been a fight between a husband and wife prior to the arrival of the police and that Appellant briefly "disarm[ed] the husband [and the wife] then stashed the firearm in the window well" so as to "explain[] why [Appellant's] DNA was found on the firearm." Appellant's Brief at 14. Appellant further testified "the bullet that was found [on his person] was given to him by" the wife during the alleged fray in order to "explain how he came into possession of a bullet that matched those of the firearm." *Id.* at 11.

[6] More specifically, Appellant "testified that he could only see a dark figure and the officer never verbally announced himself" and that Officer Findura was backlit and shining a flashlight at Appellant. Appellant's Brief at 15. Appellant further suggests that the body camera footage does not show Officer Findura verbally identify himself as a police officer because the audio portion "only begins after [Appellant] begins to run" and that he only ran when he saw someone brandishing a gun. *Id.*

- 4 -

Our standard of review for a challenge to the weight of the evidence is well-settled:

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question [of] whether the verdict is against the weight of the evidence. The fact–finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

Moreover, when a weight challenge is predicated on the credibility of trial testimony, appellate review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Any conflicts in the evidence or contradictions in testimony are exclusively for the fact-finder to resolve. Finally, we note that, because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination whether the verdict is against the weight of the evidence.

*Commonwealth v. Wallace*, 244 A.3d 1261, 1275–1276 (Pa. Super. 2021) (internal citations, quotations, and brackets omitted), *affirmed*, 289 A.3d 894 (Pa. 2023); *see also id*. at 1277-1278, *citing* *Commonwealth v. Brown*, 648 A.2d 1177, 1190 (Pa. 1994) (appellate court, whose review rests solely upon cold record, stands on different plane than trial court, which is aided by

on–the-scene evaluation of evidence; thus, appellate court not empowered to substitute its opinion regarding weight of evidence for that of trial judge).

Here, the trial court recalled Appellant's version of events, in contrast with the testimony offered by Officer Findura as summarized above, and determined:

> [Appellant] cross-examined [O]fficer [Findura] and elicited testimony that he was not seen making any throwing motions. [Appellant] took the stand and testified that there had been an argument between a woman and her husband and that he assisted her in disarming her spouse. This would purportedly explain the mixture of DNA on the gun[, including Appellant's contribution to the mixture]. He then testified that [the woman] took possession of the weapon but at some point had given him a bullet. [Appellant] asserted that she put the gun in the window well. He also denied that the police officer identified himself and [asserted that] all [Appellant] was able to see was a dark armed figure which he believed to be the "husband" so he ran. He asserted that his hand was holding his iPhone in his hoodie pocket, not a gun, and wanted to make sure it did not fall out while he was running. He stopped running when he encountered a police officer in front of him because that person was identifiable as an officer. The jury, trier of fact, had the right to weigh the testimony of each witness and determine which evidence it found credible. The jury was free to accept or reject the various theories argued by the Commonwealth and the defense in this case. The jury returned guilty verdicts to both counts.
>
> After reviewing the record, the verdict of the jury, while disappointing to [Appellant, did] not come as a shock to [the trial] court. The jury ha[d] the right to weigh the testimony of each witness and determine which it [found] credible. The jury made credibility determinations and factual findings that were not in [Appellant's] favor but were in no way very shocking. There is no merit to [Appellant's weight of the evidence claim].

Trial Court Opinion, 10/31/2025, at 3-4 (case citations and unnecessary capitalization omitted).

Upon review, we conclude that the facts and inferences of record do not disclose a palpable abuse of discretion by the trial court in ruling on Appellant's weight of the evidence claims. Appellant's challenges are predicated solely on the credibility of trial testimony and because the trial court had the opportunity to hear and see the evidence presented, we give the gravest consideration to its findings and reasoning regarding the weight of the evidence presented. Conflicts in the evidence or contradictions in testimony were exclusively for the jury to resolve. Moreover, the jury had the benefit of viewing the police body camera video footage at trial. We simply may not reweigh the evidence in this case or substitute our judgment for the trial court's determination. Furthermore, in this case, the trial court concluded that the evidence was not so unreliable and/or contradictory that the guilty verdicts were based upon pure conjecture or shocking to its conscience. We discern no abuse of discretion in the trial court's assessment. Finally, we recognize that a ruling on a request for a new trial based on a weight-of-the-evidence claim is one of the least assailable trial court rulings. Accordingly, for all the foregoing reasons, we conclude that Appellant is not entitled to relief on his weight of the evidence claims.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/09/2026